43 859
45 846
43 859
113 362

### No. 1240.

### WHEELER & WINTER VS. E. McBAIN ET. AL.

The vendor of lands who warrants the title cannot redeem them in such a manner as to invalidate the title he is bound to warrant.

2. When the vendor obtains from the State, or from a donee of the State, a recognition of his rights, and a return of the land, he can not, by having the title placed in the name of another, escape the responsibility of a warrantor.

3. The one in whose name the title is made out can not hold the lands adversely to those who bought from the tax debtor.

4. The Board of Levee Commissioners acknowledged the title of the tax debtor, and because of his right gave up all claims. By placing the title in the name of another, who had notice of the sale previously made by the tax debtor, it will not enable the purchaser to hold these lands against the purchasers from the tax debtor.

APPEAL from the Twenty-seventh District Court for the Parish of West Carroll. Williams, J.

Wells & Gray for Plaintiffs and Appellees.

Stone & Murphy and Potts & Hudson for Defendants and Appellants.

The opinion of the court was delivered by

BREAUX, J. The plaintiffs on the 25th day of January, 1889, bought from E. McBain 6000 acres of land, situated in the parish of West Carroll, for the sum of $6000, in cash.

The vendor, McBain, became the purchaser of 12,000 acres in the years 1881 and 1882, at tax sale under Act 107, of the Acts of 1880.

The lands sold to plaintiffs are the undivided half of the lands thus purchased at tax sale.

The purchaser at tax sale, McBain, failed to pay the taxes. The lands were sold the second time for taxes and were adjudicated to the State of Louisiana in 1883 and in 1884.

Under Act 77, of 1888, the State donated to the Board of Commissioners of the Tensas Basin Levee District all of her lands situated within its limits.

On the 10th, or 11th, of January, 1889, McBain, to redeem the lands, paid to the sheriff of the parish of West Carroll the sum of $1124.60.

This amount was afterward paid by the sheriff to the State Treasurer.

About three months after the six months allowed to redeem under

Act 77, of 1888, had elapsed, McBain called on the Auditor for a certificate of redemption.

He testifies as a witness, that it was then he became aware that the levee tax had not been paid. He, at the time, offered to pay that tax, amounting to $220.

The Auditor refused to receive it, as the time within which to redeem had elapsed.

McBain then appealed to the Board of Levee Commissioners, to be permitted to redeem the land on payment of the balance due for taxes.

This body adopted a resolution authorizing its president to make a title to him or to his order. At McBain's instance the title was made in the name of W. M. Murphy, who paid the balance of taxes due. The latter sold these lands to T. L. Fleming.

Plaintiff tendered to Murphy half the amount paid by him, which he declined to accept.

The judgment was for plaintiffs, decreeing that they are the owners of the land claimed, but condemned them to pay to said Murphy the sum of $110, taxes paid by him on plaintiffs' land.

The sale made by Murphy to Fleming, in so far as it affected plaintiff's title, was annulled. From this judgment the defendants prosecute this appeal.

\* \* \* \* \* \* \* \*

In writing the foregoing statement of facts, we have noted, that it was on the application of McBain, that the Levee Board passed a resolution authorizing its president to place him, or any one else on his order, in possession as an owner, on the paymen of the taxes.

The amount of the price fixed, and the proceedings of said Board, make it evident that their action was influenced by a claim to the land they considered equitable.

He had paid a large amount of taxes in his attempt to redeem.

A comparatively small amount remained due, which the Auditor could not receive, for the time to redeem had elapsed.

The Board vested with right to sell availed itself of that authority to execute a quit claim deed in satisfaction of the balance of the taxes due.

This was in December, 1889, at which time plaintiffs were the owners by purchase from McBain.

The deed, in which he intervened to give it his sanction, was made to another as purchaser, who now claims to be the owner of the whole, regardless of the rights acquired by plaintiffs as vendees.

The vendor's warranty to plaintiffs precluded McBain in law from becoming party to a deed to divest plaintiffs from their ownership.

He was bound by his warranty.

The question, in so far as relates to the purchaser Murphy, presents greater difficulty in reaching a satisfactory solution.

If this purchaser Murphy had acted exclusively in his own right, and the right of McBain as tax-debtor had received no consideration from the Board, the plaintiffs could have no recourse against him.

The evidence does not justify the conclusion that McBain's interest was ignored and that the quit claim deed was given without regard to his title.

The recorded deed gave defendant, Murphy, notice.

The vendor to him testifies as to notice.

Half of the land was sold to plaintiffs for $6000, and the other half was sold by said defendants for $6500. The whole was purchased by him for $220, an amount comparatively insignificant. This alone shows the motive which prevailed in making a quit-claim deed.

It was a recognition of a right probably not entirely and conclusively defined, but none the less the right of McBain, as owner, which in its exercise inured to the benefit of the title he was bound to warrant. It can not be for an instant presumed that, had the defendant, who now claims to be the owner, presented himself to the Board, in his own right, to purchase the lands, they would have authorized the sale for such a price.

The sale can be explained only in considering it in the nature of a redemption.

While the deed itself makes no mention of a redemption, the proceedings of the Board, and other circumstances preceding and following it, leave no doubt as to the purpose.

The land claimed was purchased by plaintiffs, who holds a complete legal title.

The sale for taxes in the name of McBain, warrantor, has not divested plaintiffs of their ownership, particularly since the quit claim deed of the Levee Board.

Those in whom was the ostensible right (the Levee Board), abandoned all claims in favor of the tax debtor who had paid most of the taxes. This relinquishment enables him to maintain the title he is bound to warrant.

Judgment affirmed at appellant's costs.